IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMMUNASE BIO, LLC<br><br>Plaintiff,<br><br>v.<br><br>CSL BEHRING LLC and<br>CSL BEHRING GMBH,<br><br>Defendants. | )<br>)<br>)<br>)<br>) C.A. No. _______________<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Immunase Bio, LLC ("Immunase"), by and through its undersigned attorneys, alleges against Defendants CSL Behring LLC and CSL Behring GmbH (together, "Defendants" or "CSL") the following:

**NATURE OF THE ACTION**

1. This is a civil action for infringement of U.S. Patent Nos. 9,457,070 (the "'070 Patent") and 9,884,096 (the "'096 Patent") (collectively, the "Asserted Patents") arising under the Patent Laws of the United States, 35 U.S.C. §§ 271 *et seq.*, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2. The Asserted Patents involve methods using alpha 1-antitrypsin ("AAT") to treat and prevent graft versus host disease ("GvHD"), a potentially fatal complication of stem cell transplants, bone marrow transplantation, and other transplant events in which a donor's immune cells (*i.e.*, the graft) recognize the recipient's cells (*i.e.*, the host) as foreign and attack the recipient's tissue and organs.

3. CSL develops, manufactures, markets, and supplies protein-based therapies, including Zemaira®, an FDA-approved alpha-1 proteinase inhibitor (human) product for

intravenous administration. Zemaira® has been approved for the treatment of chronic AAT deficiency and associated emphysema.[1]




**ZEMAIRA® (alpha$_1$-proteinase inhibitor (human))**
**lyophilized powder for reconstitution for intravenous use**
**Initial U.S. Approval: 2003**

**-----------------------------INDICATIONS AND USAGE-----------------------------**

- ZEMAIRA is an alpha$_1$-proteinase inhibitor ($A_1$-PI) indicated for chronic augmentation and maintenance therapy in adults with $A_1$-PI deficiency and clinical evidence of emphysema (1).
- The effect of augmentation therapy with ZEMAIRA or any $A_1$-PI product on pulmonary exacerbations and on the progression of emphysema in $A_1$-PI deficiency has not been demonstrated in randomized, controlled clinical studies (1).

4. CSL has sponsored and supported the administration of Zemaira®—also referred to by Defendants as "CSL964" for investigational therapeutic purposes—to human subjects in the United States for both the treatment and prevention of GvHD, including through its

---

[1] **Ex. 1**, *Why Zemaira*, https://www.zemaira.com/why-zemaira; **Ex. 2**, Package Insert Zemaira at 1, https://www.fda.gov/media/77418/download?attachment.

sponsorship of clinical trials NCT04167514 (Treatment of GvHD) and NCT03805789 (Prevention of Acute Graft-Versus-Host Disease).[2]

Completed

**Treatment of GVHD in Hematopoietic Stem Cell Transplant (HSCT) Recipients Using AAT Plus Corticosteroids (CS) Compared With Corticosteroids Alone**

ClinicalTrials.gov ID NCT04167514

Sponsor CSL Behring

Information provided by CSL Behring (Responsible Party)

Last Update Posted 2025-08-29

**The Safety and Efficacy of Alpha-1 Antitrypsin (AAT) for the Prevention of Graft-versus-host Disease (GVHD) in Patients Receiving Hematopoietic Cell Transplant (MODULAATE)**

ClinicalTrials.gov ID NCT03805789

Sponsor CSL Behring

Information provided by CSL Behring (Responsible Party)

Last Update Posted 2026-04-22

Completed

No longer looking for participants

5. Zemaira®/CSL964 has undergone late-stage clinical trials for the treatment of steroid-refractory acute GvHD and for the prevention of GvHD.[3] CSL's sponsorship of these

---

[2] **Ex. 3**, *Treatment of GVHD in Hematopoietic Stem Cell Transplant (HSCT) Recipients Using AAT Plus Corticosteroids (CS) Compared With Corticosteroids Alone*, *see* https://clinicaltrials.gov/study/NCT04167514; **Ex. 4**, *The Safety and Efficacy of Alpha-1 Antitrypsin (AAT) for the Prevention of Graft-versus-host Disease (GVHD) in Patients Receiving Hematopoietic Cell Transplant (MODULAATE)*, https://clinicaltrials.gov/study/NCT03805789; **Ex. 5**, *GvHD Drugs Treatment Market Heats Up*, https://www.delveinsight.com/blog/gvhd-drugs-in-development; **Ex. 6**, *CSL's Annual R&D Day - 2021*, https://investors.csl.com/pdf/a4f0beb0-051d-4505-baf1-4f3d7cce32f9/2021-Annual-RD-Day.pdf; **Ex. 7**, *BMT CTN Protocol 1705 v.5*, https://bmtctn.net/system/files/BMT_CTN_1705_Protocol%20Synopsis_v5.0_20230814_0.pdf.

[3] *Id*.

studies, including trial NCT04167514 for treatment of GvHD, and others for prevention of GvHD, directly leads to infringement of, at minimum, Claim 1 of the ’070 Patent and Claim 1 of the ’096 Patent either literally or under the doctrine of equivalents. Defendants entice health care professionals to prescribe, and insurers to pay, for use of Zemaira® in the treatment and prevention of GvHD by sponsoring and publicizing its Phase III trials, among other scientific evidence, compendia listings, and insurance coverage.[4] Defendants’ conduct demonstrates imminent public capability to launch its product for the treatment and/or prevention of GvHD. For example, as promoted in Defendants’ investor briefing on October 20, 2020, Defendants projected launching Zemaira® for the treatment of GvHD between 2023 and 2025.[5]




6. On information and belief, Immunase asserts that discovery will show that Defendants have been encouraging and actively inducing off-label prescriptions and off-label

---

[4] *See, e.g.*, **Ex. 8**, *Medical Policy Bulletin* - Alpha 1 Antitrypsin Therapy (Prolastin-C, Aralast NP, Glassia, Zemaira), https://q1.keystonefirstvipchoice.com/content/dam/keystone-first/vip-choice/pdf/provider/resources/pharmacy/policies-20240801/Alpha_1-Antitrypsin_Therapy_(Prolastin-C,_Aralast_NP,_Glassia,_Zemaira).pdf.coredownload.inline.pdf.
[5] **Ex. 9**, CSL’s *Annual R&D Investor Briefing 2020* at 7, https://investors.csl.com/pdf/ddb7e3ca-5ac9-49dd-bbd9-c4149b11b07d/CSLs-Annual-RD-Investor-Briefing-2020.pdf.

administration of Zemaira® for the treatment of GvHD and that they have realized significant off-label sales for this indication.

7. On information and belief, CSL circumvented the need for FDA approval by sponsoring AAT clinical research using Zemaira® as the reference drug, leveraging the resulting clinical data to secure guideline and compendia support recommending use of AAT, including Zemaira®, off-label in the treatment or prevention of GvHD, and facilitating multiple insurance providers to classify AAT therapy, including Zemaira®, as "medically necessary" for GvHD, thus encouraging and actively inducing medical professionals to use Zemaira® in a way that infringes the Asserted Patents without FDA approval.

8. Plaintiff brings this action to seek damages, and for such other relief as the Court deems just and proper, for CSL's infringement of the Asserted Patents.

**THE PARTIES**

9. Immunase is a limited liability company organized under the laws of the State of Colorado with a principal place of business at 1890 N. Revere Court, Suite 6202, Aurora, CO, 80045.

10. Immunase is the exclusive owner of the Asserted Patents. Immunase was assigned full ownership rights to the '070 Patent and the '096 Patent by The Regents of the University of Colorado ("CU") on July 10, 2026.

11. On information and belief, CSL Behring LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business at 1020 1st Ave., King of Prussia, Pennsylvania, 19406.

12. On information and belief, CSL Behring GmbH is a German company with its principal place of business at Emil-von-Behring-Strasse 76, 35041 Marburg, Germany, and is a corporate affiliate of CSL Behring LLC.

13. On information and belief, Defendants develop, manufacture, market, and distribute numerous pharmaceutical products, including Zemaira®, for sale in the State of Delaware and throughout the United States.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff is asserting claims under the Patent Laws of the United States.

15. This Court has general personal jurisdiction over CSL Behring LLC because it is incorporated in Delaware, knowingly transacts business in Delaware, and, on information and belief, has engaged in, and made meaningful preparations to engage in, infringing conduct throughout the United States, including in Delaware.

16. The Court has personal jurisdiction over CSL Behring GmbH under Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, CSL Behring GmbH is not subject to the jurisdiction of the courts of general jurisdiction of any one state, and the exercise of jurisdiction is consistent with the Constitution and laws of the United States based on CSL Behring GmbH's purposeful direction of U.S. conduct relating to the accused GvHD uses, including directing, controlling, supplying, and disseminating Zemaira® and GvHD-specific protocols, instructions, and clinical-program materials to U.S. sites and clinicians. In the alternative, on information and belief, CSL Behring GmbH is subject to personal jurisdiction in this District under the Delaware long-arm statute and the Due Process Clause because it

purposefully directed activities at Delaware and because the claims arise out of or relate to those activities.

17. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because CSL Behring LLC resides in Delaware, is subject to personal jurisdiction in Delaware, transacts business in Delaware and, on information and belief, has committed, or made meaningful preparations to commit, acts of infringement in Delaware.

18. Venue is proper in this District as to CSL Behring GmbH because, as a foreign defendant, it may be sued in any judicial district in an action for patent infringement and because the claims arise from U.S. conduct directed to this District and throughout the United States.

## THE PATENTED INVENTIONS

19. The ’070 Patent, titled “Compositions, Methods and Uses of Alpha 1-Antitrypsin for Early Intervention in Bone Marrow Transplantation and Treatment of Graft Versus Host Disease,” was filed on August 12, 2011 and issued by the USPTO on October 4, 2016. The ’070 Patent is a Continuation-in-Part of U.S. Application No. 11/916,521, filed on December 4, 2007, which is a national stage application of PCT Application No. PCT/US2006/22436, filed on June 7, 2006, which claims priority to U.S. Provisional Application No. 60/687,850 filed on June 7, 2005. A true and correct copy of the ’070 Patent is attached hereto as Exhibit A.

20. The claims of the ’070 Patent cover administering alpha-1 antitrypsin (AAT), which is the same as Zemaira®’s alpha-1 proteinase inhibitor, to a human subject in need of GvHD treatment, either before, during, or after bone marrow transplantation. This administration is aimed at treating GvHD.

21. Claim 1 of the ’070 Patent recites:

> A method for treating acute graft versus host disease (GvHD) in a human subject in need thereof, said method comprising administering to the human subject a composition comprising alpha 1-antitrypsin (AAT) and treating GvHD in the human subject.

22. The '070 Patent details that AAT treatment significantly reduces GvHD progression, incidence, severity, and mortality.

23. Each claim in the '070 Patent recites an independent invention. Neither Claim 1 nor any other individual claim is representative of all claims in the '070 Patent.

24. The '070 Patent is assigned to Immunase. As the exclusive owner of all rights, title, and interest in the '070 Patent, Immunase has the right to bring this suit to recover damages for current and past infringement.

25. The inventors of the '070 Patent are Charles A. Dinarello and Eli C. Lewis.

26. Dr. Dinarello is a Professor of Medicine and Immunology at the University of Colorado School of Medicine. He received his medical degree from Yale Medical School and clinical training at the Massachusetts General Hospital. From 1971 to 1977, he worked at the National Institutes of Health (NIH) in Bethesda, MD. Dr. Dinarello serves on the editorial board of several scientific journals and has published over 600 research articles and 250 reviews and book chapters.

27. Dr. Lewis was most recently a Professor at Ben-Gurion University of the Negev in Israel, where he headed the Department of Biochemistry and Pharmacology. He received his PhD in Immunology in 2003 from the same institute and completed his postdoctoral fellowship training in Denver, Colorado in the Division of Infectious Diseases.

28. The '096 Patent, titled "Compositions and Methods Related to Graft Versus Host Disease and Treatments Thereof" was filed on April 30, 2014 and issued by the USPTO on February 6, 2018. The '096 Patent is a Continuation of U.S. Application No. 14/063,986 filed on

October 25, 2013 and U.S. Application No. 11/916,521 filed December 4, 2007, which is a national stage application of PCT Application No. PCT/US2006/22436, filed on June 7, 2006, which claims priority to U.S. Provisional Application No. 60/687,850 filed on June 7, 2005. A true and correct copy of the ’096 Patent is attached hereto as Exhibit B.

29. The ’096 Patent relates to administering AAT to a human subject to reduce the risk of onset of GvHD.

30. The ’096 Patent discloses that AAT treatment minimizes post-surgery GvHD onset.

31. Claim 1 of the ’096 Patent recites:

> A method for reducing risk of onset of graft versus host disease (GvHD) in a human subject having a non-organ transplant and at risk of developing GvHD, comprising administering to the human subject a composition comprising alpha-1 antitrypsin (AAT) or a recombinant molecule thereof, and a pharmaceutically acceptable excipient, and reducing the risk of developing GvHD in the human subject.

32. Each claim in the ’096 Patent recites an independent invention. Neither Claim 1 nor any other individual claim is representative of all claims in the ’096 Patent.

33. The ’096 Patent is assigned to Immunase. As the exclusive owner of all rights, title, and interest in the ’096 Patent, Immunase has the right to bring this suit to recover damages for current and past infringement.

34. The inventors of the ’096 Patent are Leland Shapiro, Eli C. Lewis, and Charles A. Dinarello.

35. Dr. Shapiro is an Associate Professor of Medicine at the University of Colorado School of Medicine. He received his medical degree from University of Massachusetts Medical School in 1986 and completed his clinical and research fellowship in Infectious Disease at the Tufts-New England Medical Center (now Tufts Medical Center) in Boston, MA in 1994.

Dr. Shapiro is a leading infectious diseases specialist and physician-scientist with decades of experience in cytokine biology, HIV molecular biology, and infectious disease pathogenesis. He has authored over 100 peer-reviewed publications, contributed to leading journals, and serves as an Associate Editor for Frontiers in Microbiology.

## DEFENDANTS' ACCUSED PRODUCT

36. Defendants sell, offer for sale, distribute, import and/or advertise Zemaira® in the United States. Zemaira® received initial FDA approval in July 2003 for augmentation therapy in patients with AAT deficiency having emphysema and, following CSL Limited's (parent company of CSL Behring GmbH) March 31, 2004 acquisition of Aventis Behring, has been marketed by CSL in the United States.[6] After the acquisition, Zemaira® became part of CSL's plasma therapeutics portfolio.

37. CSL Behring LLC is the Zemaira® packager and licensee of record.[7] The current Zemaira® label confirms the product is a lyophilized human-plasma derived AAT supplied in single-dose vials for intravenous ("IV") administration.[8] Defendants publicly position Zemaira® as a room-temperature stable, highly purified AAT product for IV use, with new 4- and 5-gram

---

[6] **Ex. 2** at 1; **Ex. 10** *SEC Archives – April 1, 2004 Aventis Press Release*, https://www.sec.gov/Archives/edgar/data/807198/000104746904014799/a2135462zex-99_3.htm.

[7] **Ex. 11**, *PR Newswire - CSL Behring Demonstrates Continued Commitment to Alpha-1*, https://www.prnewswire.com/news-releases/csl-behring-demonstrates-continued-commitment-to-alpha-1-community-with-addition-of-zemaira-alpha1-proteinase-inhibitor-human-4--and-5-gram-vials-302024123.html.

[8] **Ex. 12**, *Dailymed Drug Info Zemaira Alpha-1*, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=0c3354b5-a1d8-4f98-ad55-2eafe4265c4e.

vials to facilitate clinical use announced as FDA-approved in 2019 and made commercially available to the market in 2024.[9]

38. Defendants publicly promote Zemaira®'s indication for treatment of AAT deficiency in adults and associated emphysema.

39. Defendants have taken meaningful steps to position Zemaira®'s use for the treatment of GvHD. For example, Defendants have sponsored and obtained, as of October 22, 2019, an orphan drug designation ("ODD") for AAT (the drug class that includes Zemaira®) for the treatment of GvHD.[10] According to the FDA website, AAT has orphan designation status, but is not yet approved for the treatment of GvHD (*i.e.*, the orphan indication).

| | |
|---|---|
| **Generic Name:** | Human Alpha1-proteinase inhibitor |
| **Date Designated:** | 10/22/2019 |
| **Orphan Designation:** | Treatment of graft versus host disease |
| **Orphan Designation Status:** | Designated |
| **FDA Orphan Approval Status:** | Not FDA Approved for Orphan Indication |
| **Sponsor:** | CSL Behring<br>1020 First Avenue<br>PO Box 61501<br>King of Prussia, Pennsylvania 19406<br>United States |

40. ODD is a special status granted by the FDA that is intended to encourage development of treatments for rare diseases and provides incentives like market exclusivity (a 7-year period of protection after approval, during which FDA cannot approve the same drug for the same indication unless the second product is clinically superior), tax credits (up to 25% on

---

[9] **Ex. 13**, *CSL Behring Demonstrates Continued Commitment to Alpha-1 Community with Addition of ZEMAIRA®*, https://newsroom.csl.com/2024-01-02-CSL-Behring-Demonstrates-Continued-Commitment-to-Alpha-1-Community-with-Addition-of-ZEMAIRA-R-Alpha1-Proteinase-Inhibitor-Human-4-and-5-Gram-Vials.
[10] **Ex. 14**, *FDA.gov -Human Alpha1-Proteinase Inhibitor*, https://www.accessdata.fda.gov/scripts/opdlisting/oopd/detailedIndex.cfm?cfgridkey=708519.

qualified clinical trial expenses), and grant funding (eligibility to apply for federal grants to support clinical research on rare diseases).

41. ODD encourages providers to refer patients to clinical trials, such as Defendants' trials examining Zemaira® for treatment and prevention of GvHD. By seeking and acquiring ODD status for Zemaira®, Defendants have amplified the public awareness of Zemaira®'s potential to treat GvHD and thereby encouraged patients and providers to use Zemaira® in an infringing manner.

42. On information and belief, Defendants are (and were) aware of other companies seeking orphan designation status for AAT in GvHD treatment. On information and belief, companies in the same product class and therapeutic area, especially direct competitors, typically monitor these developments because an ODD can shape trial design, partnering choices, regulatory strategy, and, at approval, prevent marketing of the same drug for the same orphan indication absent clinical superiority.

43. In this case, a competitor's ODD is especially relevant because AAT is manufactured by a small number of companies such as Kamada, CSL (Zemaira®), Grifols (Prolastin), and Takeda (Aralast/Glassia, by license). Thus, Defendants knew or would reasonably have known about their competitor Kamada's ODD no later than 2014–2015 because it was openly announced and extensively reported.[11] During that time, Defendants were already engaged with AAT in GvHD clinically and subsequently advanced their own AAT-for-GvHD

[11] **Ex. 15**, *Biospace - Kamada Ltd. Awarded European Orphan Drug Designation For Its Alpha-1*, https://www.biospace.com/kamada-ltd-awarded-european-orphan-drug-designation-for-its-alpha-1-antitrypsin-to-treat-graft-versus-host-disease.

program to late-stage development.[12] The combination of Defendants and other companies promoting the off-label use of AAT to treat and prevent GvHD compounds the harm to CU.

44. On information and belief, Defendants have engaged medical practitioners like Dr. Amin Alousi, M.D., a professor at the University of Texas MD Anderson Cancer Center, as consultants to advance treatment of GvHD using AAT.[13]




- Disclosures of conflict of interest
  —Incyte: Research Support, Consultant
  —CSL Behring: Research Support, Consultant
- Discussion of off-label/investigational uses of commercial products
  —During this presentation, I will discuss off-label and/or investigational use drugs

45. For example, Dr. Alousi served as co-chair of the BMT CTN 1705 trial, a multicenter Phase III randomized study evaluating AAT combined with corticosteroids vs.

---

[12] **Ex. 16**, *CSL R&D Investor Briefing 2018* at 84-85, https://www.csl.com/-/media/shared/documents/7/rd-investor-briefing-2018.pdf.
[13] **Ex. 17**, *TCT - How I Treat - Steroid Refractory Acute Graft-versus-Host Disease* at 2, https://tct.confex.com/tct/2019/mediafile/Handout/Session4520/15-How%20I%20Treat%20SR%20aGVHD_Alousi_2019%20TCT.Full%20screen.pdf.

corticosteroids alone for high-risk acute GvHD after stem-cell transplantation.[14] In one of his presentations, Dr. Alousi specifically identifies CSL's Zemaira® in the treatment of GvHD.[15]




**DEFENDANTS' KNOWLEDGE OF THE PATENTED INVENTIONS**

46. Defendants have had knowledge or should have had knowledge of the patented inventions disclosed and claimed in the Asserted Patents and their coverage of the treatment and prevention of GvHD using Zemaira® since at least 2016, when Defendants hired CU's former Senior Licensing Manager, Matthew Pink.[16]

47. Mr. Pink worked at CU's Technology Transfer Office from 2010 to 2015, and assisted with and managed prosecution of CU's patent portfolio, including the Asserted Patents. From 2016 to November 2020, Mr. Pink worked at CSL, initially as the Director of Global Licensing, Strategy & Business Development and later as Director of Research External Innovation U.S., roles that encompassed licensing and external innovation responsibilities.[17]

---

[14] **Ex. 18**, *BMT CTN Protocol 1705 v.4*, https://bmtctn.net/system/files/BMT_CTN_1705_Protocol%20Synopsis_v4.0_20220801.pdf.
[15] Ex. 17.
[16] **Ex. 19**, *Matthew Pink LinkedIn*, https://www.linkedin.com/in/matthewdpink/.
[17] *Id.*

48. On information and belief, when Mr. Pink joined CSL in 2016, he participated in licensing discussions and negotiations with the exclusive licensee of CU's patent portfolio, Advent Bio, concerning the Asserted Patents on CSL's behalf.

49. On information and belief, Defendants continued to engage in negotiations concerning potential licensing of the Asserted Patents into at least 2019, yet ultimately failed to obtain a license.

50. Defendants have also had knowledge of the inventions disclosed in and claimed in the Asserted Patents no later than March 22, 2018, when an article by Dr. John M. Magenau, M.D. (University of Michigan Rogel Cancer Center) and at least two of the named inventors of the Asserted Patents (Drs. Dinarello and Lewis), titled "α1-Antitrypsin infusion for treatment of steroid-refractory acute graft-versus-host disease," was published (the "2018 *Blood* Publication").[18] The 2018 *Blood* Publication reports promising results from a Phase II clinical trial (NCT01700036) of AAT in the treatment of GvHD and specifically acknowledges that Zemaira® was provided at "no charge" to the researchers by CSL for testing safety and effectiveness in treating GvHD.[19]

51. Starting on December 5, 2018, CSL discussed and relied on the results of the 2018 *Blood* Publication in its 2018 R&D Investor Briefing.[20]

---

[18] **Ex. 20**, Magenau et al., *α1-Antitrypsin Infusion for Treatment of Steroid-Resistant Acute Graft-Versus-Host Disease*, 131 *Blood* 1372 (2018), https://ashpublications.org/blood/article/131/12/1372/36620/1-Antitrypsin-infusion-for-treatment-of-steroid.

[19] See id.

[20] **Ex. 16** at 85; *see also* **Ex. 9** at 67.




52. CSL's inclusion of the clinical trial results from the 2018 *Blood* Publication in its investor materials confirms to the general public that CSL believes Zemaira® to be safe and effective for GvHD—a disease for which there is otherwise "no consensus on treatment" due to safety and efficacy concerns of other products,[21] that CSL intends to present these results to FDA to seek FDA approval for use of Zemaira® in GvHD, and that CSL has characterized this as a positive and worthy use of Zemaira®, all of which would be seen by the public and especially the medical community as encouraging off-label use of Zemaira® for GvHD.

53. As another example, the 2018 *Blood* Publication is cited in CSL's 2020 Annual R&D Investor Briefing as support for further clinical development of CSL's AAT therapy (Zemaira®/CSL964).[22]

[21] **Ex. 20** at 2.
[22] **Ex. 9** at 67.




54. By publicly touting these results, CSL signaled to practitioners and the broader medical community that, notwithstanding the absence of FDA approval for such use, Zemaira® is a viable and supported option for the treatment or prevention of GvHD, a disease for which there is "no consensus" on existing treatment options. These clinical results touted by CSL in its public-facing documents were then relied on by compendia and insurers to recommend the use of AAT therapy, including Zemaira®, as medically necessary for GvHD.

55. Additionally, Defendants have had actual knowledge of the Asserted Patents no later than November 30, 2018 based on their own patent filings, such as European patent EP4321220 B1, titled "A1AT for treating acute graft versus host disease after hematopoietic cell transplantation" and assigned to CSL Behring LLC ("EP '220"), which expressly cites the Asserted Patents by number within the body of its written description.[23] Because the citations to the Asserted Patents appear in the narrative description, not as examiner-added references, these

[23] **Ex. 21**, EP4321220 B1at 12.

demonstrate CSL's contemporaneous acknowledgement and awareness of the Asserted Patents in November 2018.

[0067] In methods herein, the A1AT may be derived from pooled human plasma or may be recombinant. The A1AT may also be a fusion protein, for example, comprising a fusion partner of albumin, Fc, or polyethylene glycol. Certain A1AT products, including A1AT-Fc fusion proteins, are described in patent publications WO 2013/106589, WO 2006/133403, US 9,457,070, US 9,884,096, and WO 2013/003641. Several commercial therapeutic A1AT products are available, including Prolastin®, Prolastin® C, Glassia®, Aralast®, Aralast® NP, Zemaira®/Respreeza®, and Alfalastin® (LFB).

56. The EP '220 application was filed on November 30, 2018, after the Asserted Patents had issued (*i.e.*, the '096 Patent issued on February 6, 2018 and the '070 Patent issued on October 4, 2016). Therefore, on information and belief, CSL identified and reviewed the Asserted Patents prior to the November 30, 2018 filing date.

57. Defendants have had further knowledge of the Asserted Patents and their applicability to Zemaira® no later than July 2022. On June 26, 2022, after having met CSL's Dr. Perdita Cheshire at the BIO International Convention, Dr. Mary Tapolsky of CU initiated discussions with CSL regarding CU's "portfolio of recombinant AAT and AAT fusion technologies (which includes many issued patents); this includes composition of matter and methods of use (for GvHD prevention and treatment, graft rejection, etc.)."

58. On August 2, 2022, at the request of CSL, Dr. Tapolsky sent Dr. Cheshire a summary of CU's AAT portfolio. On August 3, 2022, Dr. Cheshire confirmed receipt and stated that she had "shared it with the Respiratory lead in our team, who will review and come back with feedback ASAP." On August 12, 2022, Dr. Cheshire informed Dr. Tapolsky that she had "heard back from [the] Respiratory team and unfortunately CSL is not interested to pursue further discussions around these patents. We are not currently looking for alternative external programs in the A1AT field."

59. Additionally, on or around, August 5, 2025, CU sent a notice letter to CSL, addressed to Bill Mezzanotte (Executive Vice President, Head of Research & Development), Dr. Cheshire (Director, Research Innovation) and Greg Boss (Executive Vice President, Legal & General Counsel), specifically informing CSL of the Asserted Patents, among others, and their applicability and coverage of CSL964/Zemaira®. Defendants responded that their product does not read on CU's patent portfolio, suggesting evaluation of the Asserted Patents. Defendants did not engage in further discussions with CU.

## CSL'S ROLE IN SECURING COMPENDIA LISTINGS AND INSURANCE COVERAGE FOR OFF-LABEL USE OF ZEMAIRA®

60. Off-label prescription of a drug is generally legal, but promotion of off-label uses by a drug manufacturer is usually illegal, so drug manufacturers use various techniques to circumvent these prohibitions to promote off-label use of their drugs.[24] Among the covert techniques employed to encourage off-label use are the efforts by drug manufacturers to have their drugs accepted and listed for off-label uses in compendia and to facilitate insurance coverage for the off-label use.[25]

61. To facilitate the listing of a drug for an off-label use, "[p]harmaceutical companies strive to establish good relationships with compendia staff, and may assign an employee as the designated compendia contact."[26] In addition, such companies provide the compendia with "packets of scientific articles, abstracts, and contact information" to encourage the compendia to list a drug of an off-label use."[27] Pharmaceutical companies "celebrate new compendia listings"

[24] **Ex. 22**, Fugh-Berman A, Melnick D (2008) *Off-label promotion, on-target sales*. PLoS Med 5(10): e210. doi:10.1371/journal.pmed.0050210.
[25] *Id*. at 1434.
[26] *Id*.
[27] *Id*.

because many insurance providers "will cover off-label uses of reimbursable drugs included in major compendia" and "because expanded insurance coverage ensures more sales."[28] Further, as noted by Congress, decisions by insurance providers "to reimburse a physician or patient for a drug" "influence what drugs are prescribed and, in part, for what uses drugs are prescribed."[29]

62. Insurance providers rely on clinical literature, compendia listings, and clinical guidelines, including, *e.g.*, the NCCN Drugs & Biologics Compendium and the NCCN Guidelines for Hematopoietic Cell Transplantation ("NCCN HCT Guidelines"), to support insurance coverage decisions on using off-label AAT for GvHD.

63. Some insurance policies explicitly characterize AAT use for GvHD as "compendia-supported" or supported by guideline-based evidence, rather than FDA approval. For example, the AmeriHealth-affiliated clinical policy authorizes use of AAT products, including Zemaira®, for steroid-refractory acute GvHD on a basis that such use is "medically necessary."[30] Ex. 23. The AmeriHealth policy references list includes the NCCN Drugs & Biologics Compendium and the NCCN HCT Guidelines.

64. Multiple insurance providers have determined that AAT therapy, including Zemaira®, is "medically necessary" for the treatment of steroid-refractory acute GvHD following hematopoietic stem cell transplantation. These insurers include: Aetna[31]; Independence Blue

---

[28] *Id.*

[29] **Ex. 23**, *Off-Label Use of Prescription Drugs, Congressional Research Service* at 10, https://www.congress.gov/crs_external_products/R/PDF/R45792/R45792.3.pdf.

[30] **Ex. 24**, *Medical Policy Bulletin, Title: Alpha 1-AntiTrypsin Therapy (e.g., Prolastin-C, Aralast NP, Glassia, Zemaira)*, https://www.amerihealthcaritasvipcare.com/content/dam/global/assets/pdf/provider/resources/pharmacy-policies-202606/Alpha%201-Antitrypsin%20Therapy%20(Prolastin-C,%20Aralast%20NP,%20Glassia,%20Zemaira).pdf.coredownload.inline.pdf.

[31] **Ex. 25**, *Aetna Alpha1-Proteinase Inhibitors Policy*, https://www.aetna.com/cpb/medical/data/100_199/0145.html.

Cross[32]; Blue Cross Blue Shield of Tennessee[33]; CVS Caremark[34]; OHSU Health Services[35]; and Centene Corporation subsidiaries (*e.g.*, Delaware First Health)[36].

65. These coverage determinations by multiple independent insurance providers normalize the use of AAT, including Zemaira®, for treatment or prevention of GvHD across the industry, reduce prior-authorization friction, and make it easier for other insurance providers to approve claims to treat GvHD with off-label AAT, including Zemaira®.

66. Additionally, Congress has also recognized off-label use of drugs in the oncology field is extensive.[37] For example, as noted by Congress, a 2018 study that "examined 43 FDA-approved cancer drugs and compared their 99 labeled uses with the acceptable uses published by a national compendium Medicare relies on to make coverage decisions" found that "[o]f the 451 compendium-accepted uses, 56% were off-label" and "[o]f the off-label uses, the authors deemed 91% as 'well-accepted off-label use.'"[38] According to Congress, the authors of the study "defined 'well-accepted off-label drug use' if the National Comprehensive Cancer Network (NCCN)

[32] **Ex. 26**, *Independence Blue Cross Alpha-1 Antitrypsin Therapy Policy*, https://medpolicy.ibx.com/ibc/Commercial/Pages/Policy/e5c6775a-632d-4cfb-af0b-8300fe2004da.aspx.
[33] **Ex. 27**, *BlueCross Blue Shield of Tennessee Alpha-1 Proteinase Inhibitor Policy*, https://www.bcbst.com/MPManual/Alpha1-Proteinase_Inhibitor_Therapy.htm.
[34] **Ex. 28**, *Alpha1-Proteinase Inhibitors Policy*, https://www.hopkinsmedicine.org/-/media/johns-hopkins-health-plans/documents/amd/drugs/amd_alpha1-proteinase_inhibitors_criteria.pdf.
[35] **Ex. 29**, *OHSU Health Services Alpha1-Proteinase Inhibitors*, https://www.ohsu.edu/sites/default/files/2026-06/ohsu-hs-mps-alpha-1-pi-04-26.pdf.
[36] **Ex. 30**, Centene Corporation Alpha1-Proteinase Inhibitors Policy (CP.PHAR.94).
[37] **Ex. 23**, Off-Label Use of Prescription Drugs, Congressional Research Service, Feb. 23, 2021, https://www.congress.gov/crs_external_products/R/PDF/R45792/R45792.3.pdf.
[38] See id.

Drugs and Biologics Compendium graded the use in its top two categories of evidence."[39] The top two NCCN categories of evidence are Category 1 and Category 2A.[40]

67. Publicly available information identifies AAT drug products like Zemaira® as being graded by NCCN as a Category 2A drug, and NCCN recommends "alpha-1 antitrypsin" drug products like Zemaira® for acute GvHD.[41] Accordingly, use of AAT drug products like Zemaira® for the treatment or prevention of GvHD is a well-accepted off-label use.

68. Since 2018, FDA has expressly recognized that drug manufacturers may communicate with insurance providers and other payors regarding unapproved uses of approved drug products for the purpose of informing coverage and reimbursement decisions.[42]

69. Discovery will show that Defendants have communicated with compendia, including NCCN, to ensure the listing of AAT, including Zemaira®, as recommended for the treatment or prevention of GvHD, and has communicated with insurance providers and other payors to facilitate insurance coverage for such off-label use. Discovery will show that these communications were made by Defendants to encourage and actively induce physicians and other healthcare providers to prescribe Zemaira® off-label for the treatment or prevention of GvHD.

70. To assist with obtaining insurance coverage for the use of Zemaira® for the treatment or prevention of GvHD, Defendants have engaged in an extensive campaign of

---

[39] *Id.*

[40] **Ex. 31**, *NCCN Development and Update Guidelines*, https://www.nccn.org/guidelines/guidelines-process/development-and-update-of-guidelines.

[41] **Ex. 32**, Venture County Health Care Plan, Prior Authorization Policy (listing alpha-1 antitrypsin among "[o]ther alternative agents recommended by NCCN for acute GVHD (category 2A)").

[42] **Ex. 33**, Drug and Device Manufacturer Communications With Payors, Formulary Committees, and Similar Entities — Questions and Answers (2018).

recruiting clinicians and other academic researchers to produce a body of evidence showing that Zemaira® is safe and effective for the treatment or prevention of GvHD.

71. The publicly available NCCN Guidelines for Patients: Graft-Versus-Host Disease states that alpha-1 proteinase inhibitor (AAT) is a "biologic[] used for GVHD."[43] That guideline identifies Dr. Magenau—lead author of the 2018 *Blood* Publication—among the NCCN Panel Members by whom the guidelines were developed.

72. On information and belief, discovery will show that compendia (*e.g.*, Micromedex DrugDex, American Society of Health-System Pharmacists ("ASHP")), which are currently behind a paywall, also recommend AAT, including Zemaira®, for treating or preventing GvHD.

73. Additionally, the compendia and guidelines base their recommendations for using AAT therapy off-label to treat or prevent GvHD on the available body of clinical and scientific evidence.

74. Defendants contributed to that body of evidence by sponsoring clinical research using Zemaira®, which enabled scientific exchange with clinicians and payor reviewers and supported the broader evidence-to-guideline/compendia pathway on which insurance providers relied to recommend insurance coverage for the off-label use of AAT, including Zemaira®, as "medically necessary" for GvHD.

75. More specifically, Defendants sponsored the research by Dr. Magenau, which resulted in the 2018 *Blood* Publication.[44] On information and belief, Dr. Magenau's *Blood* publication is a primary clinical study on which the NCCN HCT Guidelines rely for the inclusion of AAT as a "medically necessary" and recommended treatment option for steroid-refractory

---

[43] **Ex. 34**, *NCCN Guidelines for Patients: Graft-Versus-Host Disease*, https://www.nccn.org/patients/guidelines/content/PDF/GVDH-patient-guideline.pdf.
[44] Ex. 20.

acute GvHD. The Acknowledgments section of Dr. Magenau's *Blood* publication states explicitly: "The authors acknowledge CSL Behring for providing AAT at no charge." The study used Zemaira® (CSL Behring's product) and enrolled 40 patients, demonstrating a 65% overall response rate at day 28, and concluded that AAT "is a suitable candidate for future controlled trials in GVHD." The study's introduction specifically identifies the product used as "supplemental AAT (Zemaira; CSL Behring)."

76. On information and belief, Defendants and Dr. Magenau have an ongoing financial relationship. Dr. Magenau has received multiple CSL-funded grants, including: "CTSU Analysis of Data from AAT Trial - UMCC2012.043," funded by CSL Behring, October 2025 to June 2026; "Analysis of Data From HUM00067889 (UMCC 2012.043)," funded by CSL Behring, LLC, August 2025 to July 2026; and "CSL Behring Study Meeting - Travel Funds," funded by CSL Behring, LLC, November 2016 to November 2017 (which is around the time of, and on information and belief relates to, the study underlying the 2018 *Blood* Publication).[45]

77. In addition to Dr. Magenau, there are other NCCN HCT panel-associated researchers who have disclosed financial relationships with CSL. For example, Dr. Betty K. Hamilton, who is affiliated with the Cleveland Clinic Taussig Cancer Institute (a listed contributor to the NCCN HCT Guidelines), disclosed a "Consulting or Advisory Role" with CSL Behring in an ASCO publication on GvHD.[46] Further, a 2020 publication by the Journal for the NCCN noted that "data suggest that AAT is an effective treatment option for patients with steroid-refractory aGVHD" (citing the 2018 *Blood* Publication as support) and lists Sarah Anand, M.D. and Mitchell

---

[45] **Ex. 35**, John Magenau University of Michigan Research Grants, https://experts.umich.edu/4586-john-magenau/grants.
[46] **Ex. 36**, Trunk et al., *Hematopoietic Stem-Cell Transplantation*, 44 Am. Soc'y Clin. Oncol. Educ. Book e432186 (2024), https://ascopubs.org/doi/10.1200/EDBK_432186.

Horwitz, M.D. as members of the NCCN Hematopoietic Cell Transplantation Panel and as individuals that received clinical research support from CSL.[47]

78. Defendants also sponsor the clinical studies NCT04167514 (CSL964_5001) and NCT03805789 (CSL964_2001 / MODULAATE), which are Phase III trials for treatment and prevention of acute GvHD, respectively.

79. The use of Zemaira® as the reference drug in the scientific and clinical studies underlying the compendia and guideline recommendations encourages physicians to turn to Zemaira® over other AAT therapies for treating or preventing GvHD.

80. Discovery will show that Defendants made a request to organizations like NCCN to have AAT, including Zemaira®, listed in the NCCN HCT Guidelines for the treatment or prevention of GvHD, prompting insurance providers to cover AAT, including Zemaira®, for that treatment. In addition to, or in the alternative of, the foregoing, discovery will show that Defendants used their connections with, and financial support of, *e.g.*, Dr. Magenau, and others, to have AAT, including Zemaira®, listed in the NCCN HCT Guidelines for the treatment or prevention of GvHD, prompting insurance providers to cover AAT, including Zemaira®, for that treatment.

81. The combination of (1) the scientific and clinical research sponsored by Defendants; (2) the use of Zemaira® as the reference drug in the scientific and clinical research; (3) the compendia and guideline support for the use of off-label AAT in the treatment or prevention of GvHD that resulted from the clinical research using Zemaira®; and/or (4) insurance coverage from multiple insurance providers, represents a concerted and ongoing effort designed

---

[47] **Ex. 37**, Ayman Saad et al., *Hematopoietic Cell Transplantation*, Version 2.2020, 18 J. Nat'l Comprehensive Cancer Network 599 (2020).

by Defendants to encourage, persuade, and actively induce physicians, clinicians, and other health care professionals to prescribe and use Zemaira® off-label for the treatment or prevention of GvHD.

82. Additionally, Defendants' Zemaira® support materials state that Defendants help patients "gain access" to Zemaira® and offer financial services and assistance programs.[48] Discovery will show that Defendants use various access, reimbursement, and financial assistance infrastructure to further support use of Zemaira® off-label for the treatment or prevention of GvHD.

83. Physicians, clinicians, and other health care providers consider the use of Zemaira® for the treatment or prevention of GvHD as a well-accepted off-label use of the drug. Physicians, clinicians, and other health care providers have prescribed or administered Zemaira® for the treatment or prevention of GvHD for several years and continue to do so.

84. As of the date of this Complaint, no publicly available information states or indicates that Defendants have filed an application with FDA seeking approval for the use of Zemaira® in the treatment or prevention of GvHD. On information and belief, Defendants abandoned their FDA approval efforts because they had already sponsored and secured the clinical data, compendia recommendations, and insurance coverage reflecting Zemaira® as "medically necessary" for treating and preventing GvHD to achieve substantial off-label use of Zemaira® for GvHD. As a result, Defendants have profited—and continue to profit—from substantial off-label sales of Zemaira® for GvHD without incurring the cost of pursuing FDA approval.

## <u>COUNT I: INFRINGEMENT OF THE '070 PATENT</u>

---

[48] **Ex. 38**, *Zemaira Connect*, https://www.zemaira.com/support.

85. Plaintiff incorporates and re-alleges each of the preceding paragraphs as if fully set forth herein.

86. Defendants are not licensed, expressly or impliedly, or otherwise authorized to make, have made, use, offer for sale, import, or sell any compositions for use in methods that embody the inventions of the ’070 Patent.

87. Defendants have directly infringed one or more claims of the ’070 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, having made, using, offering for sale, selling, and/or importing products that practice the uses covered by the ’070 Patent in this District and elsewhere in the United States.

88. Defendants have indirectly infringed, through inducement and/or contributory infringement, one or more claims of the ’070 Patent in violation of 35 U.S.C. § 271(b) and/or (c) in this District and elsewhere in the United States by actively encouraging the off-label use of Zemaira® by physicians, clinicians, or other health care professionals for the treatment or prevention of GvHD with knowledge of the ’070 Patent and with knowledge that such off-label use would constitute infringement of the ’070 Patent.

89. Defendants’ use of Zemaira® to treat and/or prevent GvHD embodies each element of at least Claim 1 of the ’070 Patent as demonstrated below. For example, Defendants are developing and using Zemaira® to prevent and/or treat GvHD.[49]

> antibody-mediated rejection. In haematopoietic stem cell transplantation, acute graft-versus-host disease (GvHD) is a life-threatening type of rejection where the donor cells attack the recipient; it is a leading cause of mortality and morbidity following transplant. There is a significant unmet need for more effective, less toxic therapies for GvHD. We are investigating alpha-1 antitrypsin (AAT, ZEMAIRA®) for the prevention and treatment of acute GvHD in two Phase III studies.

---

[49] **Ex. 39**, CSL Annual Report 2023 at 13, 23, https://investors.csl.com/annualreport/2023/; **Ex. 40**, *CSL Capital Markets Day* at 96, https://investors.csl.com/pdf/53aa5c94-0aa2-4dcd-8e06-c889c38db241/CSL-Capital-Markets-Day.pdf.




90. As previously referenced, Zemaira® is a highly purified human AAT.[50]

> ZEMAIRA is a sterile, white to off-white, lyophilized preparation of purified alpha$_1$-proteinase inhibitor (human) (A$_1$-PI), also known as alpha$_1$-antitrypsin, to be reconstituted and administered by the intravenous route. The specific activity of ZEMAIRA is ≥0.7 mg of functional A$_1$-PI per milligram of total protein. The purity (total A$_1$-PI/total protein) is ≥90% A$_1$-PI. Each vial contains approximately 1000 mg, 4000 mg or 5000 mg of functionally active A$_1$-PI. The measured amount per vial of functionally active A$_1$-PI as determined by its capacity to neutralize human neutrophil elastase (NE) is printed on the vial label and carton. Following reconstitution with 20 mL, 76 mL, or 95 mL of Sterile Water for Injection, USP, the ZEMAIRA solution contains 73 to 89 mM sodium, 30 to 39 mM chloride, 15 to 20 mM phosphate, and 121 to 168 mM mannitol. Hydrochloric acid and/or sodium hydroxide may have been added to adjust the pH. ZEMAIRA contains no preservative.

91. Zemaira® also includes a pharmaceutically acceptable excipient.[51]

---

[50] **Ex. 2** at 13.
[51] *Id.*

ZEMAIRA is a sterile, white to off-white, lyophilized preparation of purified alpha$_1$-proteinase inhibitor (human) (A$_1$-PI), also known as alpha$_1$-antitrypsin, to be reconstituted and administered by the intravenous route. The specific activity of ZEMAIRA is ≥0.7 mg of functional A$_1$-PI per milligram of total protein. The purity (total A$_1$-PI/total protein) is ≥90% A$_1$-PI. Each vial contains approximately 1000 mg, 4000 mg or 5000 mg of functionally active A$_1$-PI. The measured amount per vial of functionally active A$_1$-PI as determined by its capacity to neutralize human neutrophil elastase (NE) is printed on the vial label and carton. Following reconstitution with 20 mL, 76 mL, or 95 mL of Sterile Water for Injection, USP, the ZEMAIRA solution contains 73 to 89 mM sodium, 30 to 39 mM chloride, 15 to 20 mM phosphate, and 121 to 168 mM mannitol. Hydrochloric acid and/or sodium hydroxide may have been added to adjust the pH. ZEMAIRA contains no preservative.

92. On information and belief, Defendants are using Zemaira® to reduce the risk of developing GvHD in human subjects.

93. On information and belief, Defendants have induced infringement by promoting off-label prescriptions of Zemaira® for use in the treatment or prevention of GvHD.

94. For example, the NCCN Compendium recommends use of AAT therapy, including Zemaira®, in patients suffering from GvHD, and several major insurance providers, such as Aetna, AmeriHealth Caritas, Blue Cross, Keystone, Moda Health, and EOCCO, consider AAT therapy, including Zemaira®, medically necessary for treating acute GvHD following hematopoietic cell transplantation.[52]

95. On information and belief, CSL's Zemaira® research support and evidence-generation campaign prompted guideline and compendia support for off-label AAT therapy in GvHD, which insurers in turn rely on to classify such use as medically necessary and to approve claims.

---

[52] **Ex. 8**; **Ex. 25** at 3; **Ex. 23** at 1-2; **Ex. 41**, *EOCCO_MPS_Alpha_1_PI* at 1-2, https://www.eocco.com/-/media/EOCCO/PDFs/Magellan-RX-policies/EOCCO_MPS_Alpha_1_PI.pdf; **Ex. 27**.

**Keystone First**
***VIP Choice***

Medical Policy Bulletin
Title:
Alpha 1-Antitrypsin Therapy (e.g., Prolastin-C, Aralast NP, Glassia, Zemaira)
Policy #:
MA08.050b

ACUTE GRAFT VERSUS HOST DISEASE (GVHD) AFTER HEMATOPOIETIC CELL TRANSPLANTATION
Alpha 1-antitrypsin therapy (e.g., Prolastin-C, Aralast NP, Glassia, Zemaira) administered intravenously is considered medically necessary and, therefore, covered for individuals 18 years of age and older who have acute graft-versus-host disease (GVHD) following hematopoietic cell transplantation in conjunction with systemic corticosteroids following no response (steroid-refractory disease) to first-line therapy options.

96. By designing and funding the clinical program that seeded those recommendations—with Zemaira® as the reference AAT product—Defendants encouraged and actively induced prescribers to use Zemaira® off-label for GvHD with knowledge of Plaintiff's patents and of the infringing nature of that use.

97. Defendants are aware that such policies exist and that prior authorization is almost always required for off-label use for treatment in GvHD. Despite this, Defendants have made no effort to prevent doctors or patients from using Zemaira® in an infringing manner, knowing that insurance companies are pre-approving prescriptions and administrations of Zemaira® for GvHD treatment.

98. Defendants also position CSL964/Zemaira® in Phase III clinical trials for both prevention and treatment of acute GvHD and highlight the program in investor and R&D materials, indicating intent to seek FDA approval and commercialize the product for this use upon successful outcomes.[53]

---

[53] **Ex. 42**, *Product Pipeline _ CSL* at 2, https://www.csl.com/research-and-development/product-pipeline; **Ex. 43**, *CSL 2025 Annual Report* at 21, https://investors.csl.com/annualreport/2025/ ("Transplant and Immunology" under "Platforms, Therapeutic Areas and Product Portfolio").

99. Defendants are actively manufacturing, inventorying and stockpiling Zemaira® in anticipation of Zemaira®'s approved use to treat and prevent GvHD.

100. Defendants have actively and intentionally encouraged acts of direct infringement by physicians, clinicians, and other healthcare providers administering and/or patients using Zemaira®, by design and with knowledge of the '070 Patent and knowledge that its acts are actively inducing infringement.

101. Defendants have induced infringement, and continue to induce infringement, of the '070 Patent under 35 U.S.C. § 271(b).

102. Defendants have contributorily infringed, and continue to contributorily infringe, the '070 Patent under 35 U.S.C. § 271(c).

103. Defendants' knowledge of the '070 Patent, and its intentional infringement of that patent, constitutes willful infringement.

**COUNT II: INFRINGEMENT OF THE '096 PATENT**

104. Plaintiff incorporates and re-alleges each of the preceding paragraphs as if fully set forth herein.

105. Defendants are not licensed, expressly or impliedly, or otherwise authorized to make, have made, use, offer for sale, import, or sell any compositions for use in methods that embody the inventions of the '096 Patent.

106. Defendants have directly infringed one or more claims of the '096 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, having made, using, offering for sale, selling, and/or importing products that practice the uses covered by the '096 Patent in this District and elsewhere in the United States.

107. Defendants indirectly infringe, through inducement and/or contributory infringement, one or more claims of the ’096 Patent in violation of 35 U.S.C. § 271(b) and/or (c) in this District and elsewhere in the United States by actively encouraging the off-label use of Zemaira® for the treatment and prevention of GvHD with knowledge of the ’096 Patent and with knowledge that such off-label use would constitute infringement of the ’096 Patent.

108. Defendants’ use of Zemaira® to treat and/or prevent GvHD embodies each element of at least Claim 1 of the ’096 Patent as demonstrated below. For example, Defendants are using Zemaira® to treat GvHD following a non-organ transplant.[54]

> antibody-mediated rejection. In haematopoietic stem cell transplantation, acute graft-versus-host disease (GvHD) is a life-threatening type of rejection where the donor cells attack the recipient; it is a leading cause of mortality and morbidity following transplant. There is a significant unmet need for more effective, less toxic therapies for GvHD. We are investigating alpha-1 antitrypsin (AAT, ZEMAIRA®) for the prevention and treatment of acute GvHD in two Phase III studies.

109. As previously referenced, Zemaira® is highly purified human AAT.[55]

> ZEMAIRA is a sterile, white to off-white, lyophilized preparation of purified alpha$_1$-proteinase inhibitor (human) (A$_1$-PI), also known as alpha$_1$-antitrypsin, to be reconstituted and administered by the intravenous route. The specific activity of ZEMAIRA is ≥0.7 mg of functional A$_1$-PI per milligram of total protein. The purity (total A$_1$-PI/total protein) is ≥90% A$_1$-PI. Each vial contains approximately 1000 mg, 4000 mg or 5000 mg of functionally active A$_1$-PI. The measured amount per vial of functionally active A$_1$-PI as determined by its capacity to neutralize human neutrophil elastase (NE) is printed on the vial label and carton. Following reconstitution with 20 mL, 76 mL, or 95 mL of Sterile Water for Injection, USP, the ZEMAIRA solution contains 73 to 89 mM sodium, 30 to 39 mM chloride, 15 to 20 mM phosphate, and 121 to 168 mM mannitol. Hydrochloric acid and/or sodium hydroxide may have been added to adjust the pH. ZEMAIRA contains no preservative.

110. Zemaira® also includes a pharmaceutically acceptable excipient.[56]

---

[54] Ex. 39.
[55] **Ex. 2** at 13.
[56] *Id.*

> ZEMAIRA is a sterile, white to off-white, lyophilized preparation of purified alpha$_1$-proteinase inhibitor (human) ($A_1$-PI), also known as alpha$_1$-antitrypsin, to be reconstituted and administered by the intravenous route. The specific activity of ZEMAIRA is ≥0.7 mg of functional $A_1$-PI per milligram of total protein. The purity (total $A_1$-PI/total protein) is ≥90% $A_1$-PI. Each vial contains approximately 1000 mg, 4000 mg or 5000 mg of functionally active $A_1$-PI. The measured amount per vial of functionally active $A_1$-PI as determined by its capacity to neutralize human neutrophil elastase (NE) is printed on the vial label and carton. Following reconstitution with 20 mL, 76 mL, or 95 mL of Sterile Water for Injection, USP, the ZEMAIRA solution contains 73 to 89 mM sodium, 30 to 39 mM chloride, 15 to 20 mM phosphate, and 121 to 168 mM mannitol. Hydrochloric acid and/or sodium hydroxide may have been added to adjust the pH. ZEMAIRA contains no preservative.

111. Defendants are developing Zemaira® to reduce the risk of developing GvHD in human subjects.

112. Defendants have induced infringement by promoting off-label prescriptions of Zemaira® for use in reducing the risk of developing GvHD.

113. For example, the NCCN Compendium recommends use of AAT therapy, including Zemaira®, in patients suffering from GvHD, and medical policy bulletins from insurers such as AmeriHealth Caritas, Moda Health, and EOCCO explicitly cover Alpha-1 antitrypsin therapy, including Zemaira®, for acute GvHD, particularly for steroid-refractory cases following hematopoietic cell transplantation. [57]

114. CSL's Zemaira® research support and evidence-generation campaign prompted guideline and compendia support for off-label AAT therapy in GvHD, which insurers in turn rely upon to classify such use as medically necessary and to approve claims.

---

[57] **Ex. 8**; **Ex. 25** at 3; **Ex. 23** at 1-2; **Ex. 41** at 1-2; **Ex. 27** at 2.

Keystone First
VIP Choice

Medical Policy Bulletin
Title:
Alpha 1-Antitrypsin Therapy (e.g., Prolastin-C, Aralast NP, Glassia, Zemaira)
Policy #:
MA08.050b

ACUTE GRAFT VERSUS HOST DISEASE (GVHD) AFTER HEMATOPOIETIC CELL TRANSPLANTATION
Alpha 1-antitrypsin therapy (e.g., Prolastin-C, Aralast NP, Glassia, Zemaira) administered intravenously is considered medically necessary and, therefore, covered for individuals 18 years of age and older who have acute graft-versus-host disease (GVHD) following hematopoietic cell transplantation in conjunction with systemic corticosteroids following no response (steroid-refractory disease) to first-line therapy options.

115. By designing and funding the clinical program that seeded those recommendations—with Zemaira® as the reference AAT product—Defendants encouraged and actively induced prescribers to use Zemaira® off-label for GvHD with knowledge of Plaintiff's patents and of the infringing nature of that use.

116. Defendants are aware that such policies exist and that prior authorization is almost always required for off-label use for treatment in GvHD. Despite this, Defendants have made no effort to prevent doctors or patients from using Zemaira® in an infringing manner, knowing that insurance companies are pre-approving prescriptions of Zemaira® for GvHD treatment.

117. Defendants also position CSL964/Zemaira® in Phase III clinical trials for both prevention and treatment of acute GvHD and highlight the program in investor and R&D materials, indicating intent to seek FDA approval and commercialize the product for this use upon successful outcomes.[58]

---

[58] **Ex. 42**, at 2; **Ex. 43** at 21.

118. Defendants are actively manufacturing, inventorying and stockpiling Zemaira® in anticipation of Zemaira®'s approved use to treat and prevent GvHD.

119. Defendants have actively and intentionally encouraged acts of direct infringement by physicians, clinicians, and other healthcare providers administering and/or patients using Zemaira®, by design and with knowledge of the '096 Patent and knowledge that its acts are encouraging infringement.

120. Defendants have induced infringement, and continue to induce infringement, of the '096 Patent under 35 U.S.C. § 271(b).

121. Defendants have contributorily infringed, and continue to contributorily infringe, the '096 Patent under 35 U.S.C. § 271(c).

122. Defendants' knowledge of the '096 Patent, and its intentional infringement of that patent, constitutes willful infringement.

**COUNT III: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ASSERTED PATENTS**

123. Plaintiff incorporates and re-alleges each of the preceding paragraphs as if fully set forth herein.

124. An actual and justiciable controversy exists between Plaintiff and Defendants regarding Defendants' imminent infringement of the Asserted Patents, and a judicial determination of infringement is necessary and appropriate to resolve this controversy.[59]

---

[59] **Ex. 40**, *CSL Capital Markets Day* at 96, https://investors.csl.com/pdf/53aa5c94-0aa2-4dcd-8e06-c889c38db241/CSL-Capital-Markets-Day.pdf.




125. Defendants already manufacture, inventory and stockpile Zemaira® on an ongoing basis, including for its approved use for the treatment of chronic AAT deficiency and associated emphysema and, on information and belief, for its off-label use in treating GvHD. On information and belief, Defendants have the production capabilities to immediately supply the market with Zemaira® for use in the treatment and/or prevention of GvHD upon FDA approval for that indication.

126. Defendants are currently conducting at least one Phase III clinical trial (NCT04167514) of its AAT product CSL964/Zemaira® for treating acute GvHD.[60] Defendants are preparing to seek FDA approval for CSL964/Zemaira® for the treatment and/or prevention of GvHD and have primed the market for subsequent commercialization. Such activities demonstrate Defendants' intent to imminently engage in commercial marketing and sale of an infringing product upon FDA approval, creating a real and immediate controversy between the parties.

---

[60] *See, e.g.*, **Ex. 6** at 90; **Ex. 5**.

127. Plaintiff is entitled to a declaratory judgment that Defendants' future commercialization of Zemaira®/CSL964 for GvHD will infringe one or more claims of the Asserted Patents.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

A. An order adjudging and decreeing that Defendants directly infringe the Asserted Patents by making, importing, using, selling, offering to sell, or distributing in the United States Zemaira® for use in the treatment or prevention of GvHD;

B. An order adjudging and decreeing that Defendants have or will induce or contribute to infringement of the Asserted Patents by making, importing, using, selling, offering to sell, or distributing in the United States Zemaira® or any product that necessarily will be administered to patients in a way that infringes one or more claims of the Asserted Patents;

C. A permanent injunction enjoining Defendants from direct or indirect infringement of the Asserted Patents;

D. That this Court award damages to Plaintiff to compensate it for Defendants' past and future infringement of the Asserted Patents, through the life of the Asserted Patents, including both pre- and post-judgment interest;

E. That this Court award increased damages under 35 U.S.C. § 284;

F. A declaration that this is an exceptional case and an award to Plaintiff its attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285;

G. An accounting of Defendants' infringing activities through trial and judgment; and

H. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues triable thereby.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Alfonso Garcia Chan
Christopher C. Campbell
Britton F. Davis
CAHILL GORDON & REINDEL LLP
900 16th Street, N.W., Suite 500,
Washington, DC 20006
(202) 862-8900

Gerald J. Flattmann
Andrew J. Cochran
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, N.Y. 10005
(212) 701-3000

August 7, 2026